## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **Ashley C. Owens,** | **Case No. 4:17-cv-00675-JED-GBC** |
| **Plaintiff,** | **(MAGISTRATE JUDGE COHN)** |
| **v.** | |
| **NANCY A. BERRYHILL**,[1] Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, | **REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL** |
| **Defendant.** | |

### REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL

This matter is before the undersigned United States Magistrate Judge for decision. Jamie Ashley C. Owens ("Plaintiff") seeks judicial review of the Commissioner of the Social Security Administration's decision finding of not disabled. As set forth below, the undersigned recommends to **DENY** Plaintiff's appeal and **AFFIRM** the Commissioner's decision in this case.

### I.     Legal Standards of Review

To receive disability or supplemental security benefits under the Act, a claimant bears the burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A). The Act further provides that an

---

[1] Ms. Berryhill, Deputy Commissioner for Operations, is leading the Social Security Administration, pending the nomination and confirmation of a Commissioner. Pursuant to Federal Rule of Civil Procedure 25(d), Deputy Commissioner for Operations Berryhill should be substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of the Social Security Act, 42 U.S.C. § 405(g).

individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Plaintiff must demonstrate the physical or mental impairment "by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d 750. The claimant bears the burden of proof at steps one through four. See Wells v. Colvin, 727 F.3d 1061, 1064 at n.1. (10th Cir. 2013). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Id.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See e.g., 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court's review is based on the

record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the [Administrative Law Judge's] findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History

On June 30, 2014, Plaintiff filed an application for disability benefits under XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1382-1383 ("Act") and a disability onset date June 24, 2012. (Tr. 21, 61). On December, 1, 2016, the Administrative Law Judge ("ALJ") found Plaintiff was not disabled within the meaning of the Act. (Tr. 18-37). Plaintiff sought review of the unfavorable decision, which the Appeals Council denied on October, 30, 2017, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner of the Social Security Administration. (Tr. 1-6).

On December 15, 2017, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal a decision of Defendant denying social security benefits. (Doc. 1). On April 6, 2018, Defendant filed an administrative transcript of proceedings. (Doc. 11). On December 26, August 8, 2018, Plaintiff filed a brief in support of the appeal. (Doc. 19 ("Pl. Br.")). On August 31, 2018, Defendant filed a brief in response. (Doc. 22 ("Def. Br.")). On October 9, 2018, Plaintiff filed a reply. (Doc. 23 (Reply)).

## III.    Issues on Appeal

On appeal, Plaintiff argues the ALJ erred "by finding [Plaintiff] could perform work which require a reasoning level of two (2) or three (3)," and erred in the allocation of weight to the

opinions of Dr. Weldon Mallgren, D.O. and Dr. Heather Ranger Kobel regarding Plaintiff's psychologically-related limitations . (Pl. Br. at 7-11).

## IV.     Facts in the Record[2]

### A.     Background

Plaintiff was born in November 1985 and thus is classified by the regulations as a younger individual through the date of the ALJ decision. (Tr. 32, 43); 20 C.F.R. §§ 404.1563(c), 416.963(c). Plaintiff alleged disability due to anxiety, depression, and difficulty going out in public. (Tr. 61). The ALJ further found Plaintiff's obesity and degenerative disc disease were severe impairments.[3] (Tr. 23). Plaintiff has a high school level education. (Tr. 43).

### B. Medical Opinions

#### 1.   Psychological Consultative Examination: Johna Kay Smasal, Ph.D.

On April 3, 2012, Dr. Smasal examined Plaintiff and assessed the extent of her psychological limitations. (Tr. 282-287). Plaintiff reported a history of being placed in an individualized education program (IEP) and said that English was her most difficult subject, however, said that currently she writes stories and draws. (Tr. 283). Plaintiff reported that for her last job she worked for three weeks calling houses to solicit donations. (Tr. 283). She was fired from that position for being absent following a shoulder injury. (Tr. 283). Plaintiff reported working for three years as a cook and the job ended after the restaurant closed down, and also worked as a grocery store and for a movie theater. (Tr. 283). Plaintiff cited to knee and back problems as reasons for being unable to work. (Tr. 283). Plaintiff reported sleeping poorly even with Trazadone, that she exercises once a week due to her knee, and her mood is generally, "okay."

---

[2] Since the ALJ fully developed the record and the parties have adequately articulated Plaintiff's medical history in their briefs, the Court will only summarize the relevant facts to provide context to Plaintiff's impairments and address the issues raised.

[3] Plaintiff's appeal is not proceeding on physical-based limitations, thus the undersigned's focus is on the alleged non-exertional limitations.

(Tr. 284). Plaintiff denied a history of psychiatric hospitalizations, reported that she had sought individual psychotherapy but he "insurance got turned off." (Tr. 284). Regarding manic symptoms, Plaintiff reported experiencing periods of decreased need for sleep, the most recent entailed her remaining away for 72 hours where she spent time playing an online game and drawing pictures. (Tr. 284). Plaintiff denied periods were she was more talkative than usual and denied experiencing racing thoughts. (Tr. 284). Plaintiff denied a history of suicide attempts and denied experiencing suicidal ideation. (Tr. 284). Plaintiff reported experiencing a depressed mood for much of the day, most days, for two weeks or more, and tend to happen once or twice a month. (Tr. 284). Plaintiff was uncertain about what may contribute to the depressive symptoms. (Tr. 284). Dr. Smasal noted "[h]owever she said she has 'tons of friends' with whom she speaks daily over the computer." (Tr. 284). Plaintiff reported some changes in memory, concentration, and attention. (Tr. 284). Plaintiff reported that she experienced panic symptoms a couple times in the year lasting for a few minutes. (Tr. 284). Plaintiff reported that although she does not like to leave her house due to anxiety, she leaves the house to drop off and pick up her son from school, she sometimes visits her mother on the weekends, attends a quilting activity once a month, attends school events as needed, and has never skipped a doctor's appointment for herself or her son. (Tr. 284). Dr. Smasal observed that Plaintiff was: (1) oriented to the time, date, and place; (2) able to count backwards from twenty to one without error; (3) able to accurately complete serial threes; (4) to immediately recall three words that were stated to her; (5) reflected concrete reasoning; (6) able to perform simple calculation tasks without pen and paper, and; (7) able to recall all three of the words stated to her earlier in the interview. (Tr. 285). Dr. Smasal noted that Plaintiff: (1) drove herself to her appointment; (2) exhibited an appropriate affect and hygeine; (3) exhibited good eye-contact and demonstrated unremarkable behavior; (4) had good insight into her problems and intact judgement; (5) demonstrated no memory impairments; (6) demonstrated a euthymic mood; (6) demonstrated

motor activity within normal limits, and; (7) exhibited organized thought process. (Tr. 285-86).
Dr. Smasal noted that with guidance and support Plaintiff had been able to overcome some of her
anxiety in some instances, such as attend barber school. (Tr. 286). Dr. Smasal opined that
Plaintiff's "anxiety symptoms and depression symptoms are likely to make it difficult for her to
persist in attention, concentration, memory consolidation, and social interactions in a work
environment. However, her prognosis is good provided she receive appropriate psychosocial and
educational supports." (Tr. 286).

**2.   Treating Psychiatrist Opinion: Grand Lake Mental Health Center, John Mallgren,
D.O.**

On October 5, 2016, Dr. Mallgren, signed a medical source statement indicating that
Plaintiff had marked to severe limitations in all areas of mental functioning that existed on or
before June 24, 2014. (Tr. 590-94). An attached mental status form states:

> [Plaintiff] often appears anxious and worrying. She is very detail oriented [and] will
> [put] things on the desk to be correct, uniform. She likes detail, coloring, doesn't
> like to be out of the lines, likes crafts. She often appears unkempt and reports that
> she sleeps 10-15 hours or more per day. She only socializes over games on internet.
> She reports to not like change + makes her panic. She feels she always needs to be
> in control. . . .
>
> …likes routine [and] needs reassurance.

(Tr. 592). Dr. Mallgren added that Plaintiff does not like loud noises, crowded spaces, [and] people
talking a lot. Dr. Mallgren stated that Plaintiff could reason and respond. But often has to be right
which creates anxiety. (Tr. 592). For description of activities, Dr. Mallgren wrote that Plaintiff
sleeps and cares for her son. (Tr. 592). He noted that Plaintiff's son has a lot of appointments which
control her daily activities. (Tr. 593). Dr. Mallgren concluded that Plaintiff's anxiety was severe
and that she has to have a routine and that medication and therapy will help. (Tr. 593). Dr. Mallgren
opined: (1) sometimes (depending on mood and symptoms, Plaintiff could remember, comprehend

and carry out simple instructions on an independent basis; (2) due to anxiety, Plaintiff could not remember, comprehend and carry out complete instructions on an independent basis, and; (3) due to anxiety, Plaintiff could not respond appropriately to work pressure, supervision, and coworkers. (Tr. 593).

### 3. Agency Reviewing Opinion for Mental Impairment: Kieth McKee, Ph.D.

On December 13, 2014, Dr. McKee reviewed Plaintiff's medical records and rendered an opinion regarding the extent of Plaintiff's non-exertional limitations and the impact of the limitations on Plaintiff's ability to work. (Tr. 62-67).

Dr. McKee reviewed the record noting: (1) Plaintiff's prescriptions included Effexor, hydroxyzine and melatonin; (2) a learning disability reported in the April 2012 psychological consultative evaluation with Dr. Smasal; (3) medical records from Grand Lake Mental Health where in July 2014 Plaintiff presented with symptoms of "Major Depression, Recurrent, Moderate and Generalized Anxiety," reported feelings of depression, difficulty sleeping, racing thoughts, no close friends, and most of her friendships and acquaintances are on the internet; (4) the July 2014 medical record indicating that Plaintiff was supported by her adoptive mother, not working due to back pain and referred for medication management (Tr. 67 (citing 290-97)); (5) an August 2014 clinic summary plan indicating Plaintiff was prescribed Effexor XR, melatonin and Hydroxyzine Pamoate for anxiety and her prognosis was good with ongoing treatment (Tr. 67 (citing Tr. 297-300)); (6) Dr. Kobel's October 2014 Consultative evaluation noting that Plaintiff drove on her own and arrived early for the exam, accompanied by her 7 year old son and presented in good spirits, euthymic with congruent affect. It was noted that Plaintiff was alert and oriented to person, place, time and situation, she was able to follow a basic, three step instruction, and her memory, attention, and concentration were adequate for the evaluation. Plaintiff spoke with a normal rate, rhythm, and tone. Plaintiff made adequate eye contact and her attitude was pleasant and cooperative. It was

noted that Plaintiff's intelligence was estimated in the average to low average range, she was able to perform serial 7s very quickly and correctly and able to provide adequate responses to questions related to judgment, insight and abstraction (Tr. 318-320), and; (7) a third party report completed by Plaintiff's mother indicating that Plaintiff has to be reminded to bathe, does not wash her hair, does not cook, eats fast foods, has to be told to do laundry. She does not do most housekeeping chores, rather, her son helps her with the chores. Plaintiff can drive, takes her son to school, does some shopping, pays bills, and counts change. Plaintiff is on the computer 12 to 16 hours a day playing games and needs reminders for appointments and meetings. Dr. McKee concluded the:

> Evidence supports affective and anxious mental impairments as well as [a history] of learning disabilities. [Plaintiff] is currently in mental health counseling to address managing her mental [symptoms] and receives [medication] for her mental [symptoms]. [Plaintiff's] mental allegations are supported and considered credible. [Plaintiff] appears to be in the early stages of [treatment] and prognosis is considered good [with] ongoing mental health [treatment]. Her mental [symptoms] appear to impose moderate limitations in global functioning.

(Tr. 67). Dr. McKee opined that Plaintiff demonstrated: (1) moderate restriction of activities of daily living; (2) moderate difficulty in maintaining social functioning; (3) moderate difficulty in maintaining concentration, and (4) no repeated episodes of decompensation, of extended duration. (Tr. 66). Dr. McKee opined that Plaintiff did not meet Listing criteria. (Tr. 66). Dr. McKee opined Plaintiff was not significantly limited in her ability to: (1) remember locations and work-like procedures; (2) remember and carry out short and simple instructions (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; (5) sustain an ordinary routine without special supervision; (6) work in coordination with or in proximity to others without being distracted by them; (7) make simple work-related decisions; (8) complete a normal workday and workweek without interruptions from psychologically based symptoms and

to perform at a consistent pace without an unreasonable number and length of rest periods; (9) ask simple questions or request assistance; (10) accept instruction and respond appropriately to criticism from supervisors; (11) get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and; (12) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (Tr. 68-69).

Dr. McKee opined that Plaintiff was moderately limited in her ability to carry out detailed instructions, and interact appropriately with the general public (Tr. 68-69). Dr. McKee opined that Plaintiff could understand and perform simple and some but not all more complex work with routine supervision, could relate to supervisors and coworkers on a superficial work basis, limited to work in environments that involve limited/incidental interaction with the general public, and would be aware of basic hazards and could adapt to a general work environment. (Tr. 70). Following Dr. McKee's opinion, Dr. William H. Oehlert, M.D., opined that Plaintiff had an RFC to perform past relevant work. (Tr. 71).

### 4. Agency Reviewing Opinion for Mental Impairment: Ron Cummings, Ph.D.

On February 25, 2015, Dr. Cummings reviewed Plaintiff's medical records and rendered an opinion regarding the extent of Plaintiff's non-exertional limitations and the impact of the limitations on Plaintiff's ability to work. (Tr. 81-85). Dr. Cummings reviewed the record presented a summary and conclusions identical to that of Dr. McKee and affirmed the November 2014 opinion of Dr. McKee. (Compare Tr. 82-85 with Tr. 67-69).

### 5. Grand Lake Mental Health Medical Record

On From December 18, 2014, through February 3, 2015, it was noted that Plaintiff was euthymic, well groomed, had a good attention span, linear thoughts, and good eye contact. (Tr. 369-374). On January 19, 2015, Plaintiff reported that she tries not to become overwhelmed but that some days are better than others. (Tr. 372). Plaintiff reported that her health struggles impacts

her mood and she tries to use her positive coping skills daily. (Tr. 372). On February 3, 2015, it was noted that Plaintiff was euthymic, well groomed, had a good attention span, linear thoughts, and good eye contact. (Tr. 493). On February 9, 2015, Plaintiff reported that she had a few days of depression two weeks prior, and described these symptoms as "few and far between." (Tr. 455). On February 20, 2015, it was noted that Plaintiff was euthymic, well groomed, had a good attention span, linear thoughts, and good eye contact. (Tr. 492). Plaintiff reported that she is a good listener, enjoys talking to people and being helpful, and used positive coping skills. (Tr. 492).

February 24, 2015, it was noted that Plaintiff was euthymic, well groomed, had a good attention span, linear thoughts, and good eye contact. (Tr. 491). Plaintiff reported that she uses her positive coping skills daily. (Tr. 491). On March 6, 2015, it was noted that Plaintiff was euthymic, well groomed, had a good attention span, linear thoughts, and good eye contact. (Tr. 490). Plaintiff reported feeling depressed due to her son's disability review process, feels overwhelmed, and tries using her coping skills. (Tr. 490). On March 13, 2015, it was noted that Plaintiff was euthymic, well groomed, had a good attention span, linear thoughts, and fair eye contact. (Tr. 489). As with many of these follow-up treatment notes, there was no new need or goal identified. (Tr. 489). On April 3, 2015, it was noted that Plaintiff was euthymic, well groomed, had a good attention span, linear thoughts, and good eye contact. (Tr. 487). Plaintiff reported that she draws, sews quilts, and finds these hobbies therapeutic. (Tr. 488). On April 10, 2015, Plaintiff reported feeling very anxious and getting depressed regarding a social security hearing. (Tr. 484). On May 7, 2015, Plaintiff reported recently experiencing a panic attack while in a big crowd. (Tr. 483).

On June 11, 2015, it was noted that Plaintiff was anxious and she reports feeling depressed and overwhelmed as her family goes through a crisis. (Tr. 479). On June 22, 2015, Plaintiff reported that she was off Effexor for month but had resumed taking the medication for the previous

two weeks, in addition to taking all of the other prescriptions. (Tr. 451). Plaintiff reported that her depression and anxiety were "up and down" since she stopped Effexor, but her symptoms improved once she resumed the medication. (Tr. 451). In a record dated June 23, 2015, it was noted that her appearance was adequate, hygiene was fair, fund of knowledge was fair, exhibited a depressed mood, appropriate affect, good judgement, normal thought process and thought content. (Tr. 453). From July through August 2015, Plaintiff was euthymic, well groomed, had a good attention span, lineal thoughts, and good eye contact. (Tr. 471-77). Plaintiff reported that she did self-care, her doctor increased her anxiety medications, and she felts the medication helped her symptoms. (Tr. 471). Plaintiff reported that she also used problem solving to help reduce anxiety. (Tr. 471). In treatments records From August 21, 2015, through October 2015, Plaintiff was euthymic, well groomed, had a good attention span, lineal thoughts, and good eye contact. (Tr. 456-69). In a record dated August 13, 2015, it was noted that Plaintiff was anxious. (Tr. 470).

In an assessment which appears to have been created on July 11, 2016 (Tr. 500, 505 indicate the July 11, 2016 for starting the goals), it is noted that Plaintiff had no severe issues, moderate problems with in friendship and social relationships, and mild difficulties regarding primary support. (Tr. 500). The Clinical Interpretive Summary attached to the July 2016 assessment states that Plaintiff lived with her fiancé and son, reported that she was not feeling depressed at all, and her medications were working well for her for the time. (Tr. 502). Plaintiff reported that she still experiences anxiety on a regular basis and most of the time the anxiety is situational with occasional panic attacks. (Tr. 502). Plaintiff reported that she experienced a panic attack while waiting for her son's hearing regarding disability benefits. (Tr. 502). The report summarizes:

> [Plaintiff] continues to have a hard time with making decisions. She reported she has a lot of fear in regards to being out in the community or at stores. She reported she worries about her son and his health and if she is able to interact with others appropriately. She reported she has a fiancé who is living with them now and she

wants to share the parenting role, but has a hard time allowing her fiancé to be active in his parenting role. She processed that a lot of times she doesn't feel like he totally understand[s] her son and what he experiences with his mental health. She processed that she wants to let him in more but worries. . . . [Plaintiff] reported she still does most of her socializing on line. She reported she has many friends and social network and support group on line. She reported she met her fiancé on the internet. She reported she feels safe and comfortable with the relationships she has with her online friends. She reported she has a hard time with groups of people and getting out and doing things especially if they are not in regular routine. . . . She reported when she thinks about having to have a job she gets very anxious and will have panic over it. She reported she continues to have low moods and will sleep for long periods of time.. . . She reported she does not socialize outside her immediate family or social gaming online.

(Tr. 502). The report concluded that Plaintiff's prognosis for treatment was "fair at this time," recommended that she received medication management once a month, individual therapy four hours per month, and therapeutic behavior services one hour per month. (Tr. 502).

In a record dated September 6, 2016, Plaintiff reported that her anxiety was "good" and kept under control through her medications. (Tr. 586). Plaintiff reported experiencing a fluctuating mood of either "really happy or really flustered." (Tr. 586). Plaintiff reported that she was sleeping well and voiced no other concerns. (Tr. 586). On October 4, 2016, Plaintiff rated her anxiety "pretty good, when I don't have to go far from the house," and rates it an intensity of three to four out of ten. (Tr. 385). Plaintiff reported no problems with depression, her moods had been "pretty ok" and "her S/O states that she has had 'a little bit' of mood swings, stating 'she can be 2/10 all day long, then switch to 9/10 really fast . . . but quickly go back to 2/10.'" (Tr. 585). Plaintiff reported that she had been sleeping well and did not need to take melatonin for the past two weeks and that she sleeps about five to six hours a night. (Tr. 585).

## V.    Analysis

### A.    Weight to Medical Opinions

Regarding weight to medical opinions the ALJ wrote:

. . . Dr. Mallgren signed a medical source statement indicating that [Plaintiff] had marked to severe limitations in all areas of mental functioning. A mental status form

was also completed that appears to be based on [Plaintiff's] subjective complaints. Dr. Mallgren opined that [Plaintiff] could not respond appropriately to work pressure, supervision, and coworkers; and could not remember, comprehend, and carry out complex instructions on an independent basis. He further opined that [Plaintiff] could "sometimes" remember, comprehend, and carry out simple instructions on an independent basis. Dr. Mallgren also noted that medication and therapy would help. . . . The Administrative Law Judge gives no weight to Dr. Mallgren's opinion. . . . . Dr. Mallgren's opinion that [Plaintiff] has a marked limitation in remembering, comprehending; and carrying out very simple, short instructions is not consistent with the evidence or with [Plaintiff's] activities. [Plaintiff] writes stories, draws pictures, plays online role-playing games for 12-16 hours a day, quilts, and sews. This is completely inconsistent with the extreme limitations given by Dr. Mallgren. . . . While the undersigned has carefully considered Dr. Mallgren's opinion, it is given no weight because it is in conflict with treatment records from Grand Lake Mental Health, is inconsistent with the other substantial evidence as noted above, and is also inconsistent with the claimant's activities. For these reasons, Dr. Mallgren's opinion is given no weight.

(Tr. 29). With regards to the opinions of Dr. McKee and Dr. Cummings, the ALJ wrote:

Two psychological medical experts with the State Agency, Dr. McKee and Dr. Cummings, determined that the claimant could understand and perform simple and some, but not all, more complex work with routine supervision; relate to supervisors and co-workers on a superficial work basis; adapt to a general work environment; and was limited to work environments that involved limited/incidental interaction with the general public. The Administrative Law Judge has accorded some weight to the opinions of the State Agency medical consultants because they are deemed experts and highly knowledgeable in the area of disability and because their opinions are well supported by medically acceptable clinical and laboratory techniques and largely consistent with the record as a whole.

(Tr. 31-32). Regarding Dr. Kobel's consultative examination, the ALJ wrote:

Consultative psychological evaluation on October 20, 2014, was consistent with a major depressive disorder and generalized anxiety disorder (Exhibit 6F). . . On October 20, 2014, the claimant stated that she had attended her 10-year high school reunion (Exhibit 6F, page 3).

(Tr. 23-24) and:

[Plaintiff] underwent consultative psychological evaluation on October 20, 2014. [Plaintiff] drove to the examination with her son. She reported that she cooked, washed dishes, did laundry, and performed housecleaning tasks "without limitations" and had attended her 10-year high school reunion. Mental status examination showed euthymic mood with congruent affect, and was able to follow basic three-step instructions. [Plaintiff] was able to read, write, and comprehend as evidenced by her successful completion of screening forms. Her memory, attention, and concentration were adequate. She made adequate eye contact and her attitude

was very pleasant and cooperative. The claimant was able to perform serial 7's, very quickly providing five correct answers. Diagnosis was major depressive disorder and generalized anxiety disorder (Exhibit 6F).

(Tr. 27-28).

### 1.    Dr. Mallgren's October 2016 Opinion

Plaintiff argues that the ALJ erred in according no weight to the October 2016 opinion of Dr. Mallgren.

An ALJ may give greater weight to the opinion of a State agency medical consultant over other opinions when the consultant's opinion is better-supported by the record than the opinion of the treating physician. See 20 C.F.R. § 404.1527(e)(2)(ii) (ALJ should evaluate a state agency medical consultant's opinion using the factors set forth in 20 C.F.R. § 404.1527(a)-(d)), 404.1527(c)(4) (ALJ must consider whether an opinion is consistent with the record as a whole). The RFC was supported by the opinions of the state agency physicians, and the ALJ reasonably found Dr. Mallgren's opinion was not entitled to any weight. See 20 C.F.R. § 404.1527(c)(3) (opinions receive weight based on their supportability); see also Arterberry v. Berryhill, 743 F. App'x 227, 230–31 (10th Cir. 2018) (concluding that substantial evidence supported decision, to give limited weight to treating physician's opinions reflecting extreme functional limitations when physician's opinions contrasted sharply with his own treatment records and other evidence in the record); Dixon v. Colvin, 556 F. App'x 681, 682–83 (10th Cir. 2014) (finding that substantial evidence supported ALJ's decision to give little weight to treating physician's opinion regarding extreme limitations in several areas of mental functioning where physician's opinion was not supported by limited mental health treatment and inconsistent with reports prepared by the agency consultative examiners and medical consultants, and the record as a whole); Taylor v. Astrue, 266 F. App'x 771, 776–77 (10th Cir. 2008) (affirming case where ALJ did not give weight to treating physician and supported this allocation of weight with evidence of contradictions in the

record). The ALJ reasonably declined to give weight to this opinion, which the ALJ found inconsistent with the overall record. (See 20 C.F.R. § 404.1527(c)(4) (stating an ALJ must consider whether an opinion is consistent with the record as a whole); see also Raymond v. Astrue, 621 F.3d 1269, 1272 (10th Cir. 2009) (ALJ reasonably discounted treating physician opinion which was inconsistent with other medical evidence). Moreover, the ALJ could reasonably rely on the opinion of the state agency physicians. See 20 C.F.R. § 416.927(e)(2)(i) (state agency medical consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"); Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2008) (a non-examining physician is an acceptable medical source, whose opinion the ALJ is entitled to consider).

Plaintiff does address the inconsistencies enumerated by the ALJ nor does Plaintiff address the opinions from Drs. McKee and Dr. Cummings. The undersigned finds that substantial evidence supports the ALJ's according no weight to the Dr. Mallgren's opinion.

**2.     Omission of Weight to Dr. Kobel's October 2014 Consultative Evaluation**

Plaintiff argues that the ALJ committed a reversible error in failing to provide explicit weight to Dr. Kobel's consultative evaluation. Pl. Br. at 7. The ALJ extensively discussed the material evidence throughout the decision and the ALJ's references to the records indicate the ALJ considered Dr. Kobel's examination. (Tr. 23-24, 27-28). Moreover, the ALJ assigned weight to the to the opinions of Dr. McKee and Dr. Cummings who cited Dr. Kobel's examination as evidence that Plaintiff was capable of work. (Tr. 31-32 (assigning "some weight" to the state agency medical opinions), (Tr. 67-69 Dr. McKee's opinion addressing Dr. Kobel's examination), (Tr. 82-85 (Dr. Cummings opinion addressing Dr. Kobel's examination)).

Plaintiff fails to meet her burden in demonstrating how the omission of according Dr. Kobel's consultative examination weight would change the outcome of the case. See Vititoe v.

Colvin, 549 Fed.Appx. 723, 729–30 (10th Cir. 2013) (citing Shinseki v. Sanders, 556 U.S. 396, 409–10, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). Dr. Kobel's examination demonstrates Plaintiff's ability to work and does not demand a different conclusion than the one the ALJ reached and the ALJ's failure to assign weight to Dr. Kobel's examination is harmless. See Mays v. Colvin, 739 F.3d 569, 579 (10th Cir. 2014) (concluding where "the agency consultants' opinions proved inconsequential when the ALJ limited [claimant] to sedentary work ... the alleged failure to discuss the consultants' opinions would constitute harmless error")

### B.      RFC and Reasoning Level

Plaintiff argues the ALJ erred "by finding [Plaintiff] could perform work which require a reasoning level of two (2) or three (3)." Pl. Br. at 5-7. The ALJ determined that Plaintiff had the:

> residual functional capacity to lift and/or carry 10 pounds occasionally and up to 10 pounds frequently; stand and/or walk at least 2 hours in an 8-hour workday; and sit for at least 6 hours in an 8-hour workday (Sedentary work is defined in 20 CFR 416.967(a)) except she is limited to simple, repetitive tasks; can relate to supervisors and coworkers only superficially; and cannot work with the public.

(Tr. 25). The ALJ further concluded that Plaintiff could perform work such as: (1) touch up screener (DICOT #726.684-110); (2) document specialist (DICOT #249.587-018); (3) addresser (DICOT #209.587-010), and; (4) semi-conductor bonder (DICOT #726.685-066). (Tr. 32). The ALJ formulated the RFC from consideration of all of the evidence. Plaintiff contends each of the jobs identified by the VE have a reasoning level "2" or "3." (Pl. Br. at 5-7). GED levels note the educational level required for a job rather than a job's duties. GED does not describe the specific mental or skill requirement of a particular job, but instead describes the general educational background to ordinarily make an individual suitable for the job. The DOT explains:

> General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary

school, high school, or college. However, it may be obtained from experience and self-study.

DOT, App. C, § III, 1991 WL 688702. Thus, GED does not describe the duties, requirements, or demands of any particular occupation listed in the DOT. Rather, GED describes in general terms the educational level expected of someone who performs a given occupation. RFC represents the most a claimant can do despite the physical or mental limitations caused by his medical impairments; it does not incorporate educational background. See 20 C.F.R. §§ 404.1545(a), (c) (defining RFC and enumerating mental abilities, including understanding, remembering, and carrying out instructions, and responding appropriately to supervision, co-workers, and work pressures), 404.1560(c) (distinguishing between RFC and vocational characteristics, including education, considered at step five). There is no apparent conflict between the ALJ's RFC finding – limiting Plaintiff to simple and repetitive tasks, only superficial interaction with coworkers and supervisors, and no interaction with the public – and the VE's testimony that a hypothetical individual could perform occupations with GED reasoning levels of 2 or 3. See Calvert v. Berryhill, No. 4:16-CV-00639-GBC, 2018 WL 1470580, at *4 (N.D. Okla. Mar. 26, 2018).

In Hackett, the Tenth Circuit found level 3 reasoning inconsistent with a limitation to "simple and routine work tasks" and remanded the case to the ALJ. See Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005). However, the Tenth Circuit has observed in dictum a limitation to "simple and routine work tasks" appeared consistent with GED level 2 reasoning. Id. The Addresser position contains a reasoning level of "2," thus complying with Hackett. See Addresser, DICOT 209.587-010, 1991 WL 671797.

Thus, any arguable deficiency would be harmless, at most, and would not have changed the outcome. See Raymond v. Astrue, 621 F.3d 1269, 1274 (10th Cir. 2009) (even assuming two of three jobs relied on by the ALJ were erroneous, the court affirmed the ALJ's decision where substantial evidence showed the claimant could do the third job, and the job existed in significant

numbers in the national economy). <u>See</u> <u>also</u> <u>Vititoe</u>, 549 F. App'x at 729-30 (citing <u>Sanders</u>, 556 U.S. at 409-10).

## VI.    Recommendation

For the reasons set forth above, the undersigned RECOMMENDS to DENY Plaintiff's appeal and AFFIRM the Commissioner's decision in this case.

## VII.    Notice Regarding Objection

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma, no later than January 16, 2019.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b) (3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

<u>Id.</u>; <u>see</u> <u>also</u> 28 U.S.C. § 636(b) (1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." <u>United States v. One Parcel of Real Property</u>, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting <u>Moore v. United States</u>, 950 Ph.D. 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

SUBMITTED on January 2, 2019.

**Gerald B. Cohn**
**United States Magistrate Judge**